1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 MARIFE S. JARILLO,                            Case No.: 15cv2677-MMA (BLM)

12                      Plaintiff,    **ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT;**

13 v.                              [Doc. No. 26]

14 RELIANCE STANDARD LIFE
INSURANCE CO.,               **AND DENYING DEFENDANT'S CROSS-MOTION FOR JUDGMENT**

15

16                    Defendant.    [Doc. No. 27]

17

18       Plaintiff Marife S. Jarillo ("Plaintiff") filed the instant action against Defendant

19 Reliance Standard Life Insurance Company ("Reliance" or "Defendant") pursuant to the

20 Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). *See*

21 Complaint. Plaintiff alleges one cause of action pursuant to 29 U.S.C. § 1132(a)(1)(B),

22 seeking to recover benefits under a group long-term disability ("LTD") policy issued by

23 Reliance to Plaintiff's employer. Complaint ¶¶ 17-20. On January 10, 2017, the parties

24 filed opening trial briefs. Doc. Nos. 26, 27. On February 7, 2017, the parties filed

25 responsive trial briefs. Doc. Nos. 29, 30. The Court conducted a bench trial on February

26 28, 2017, wherein the Court heard oral argument from both parties. Doc. No. 38. Having

27

28

considered the parties' submissions, the administrative record[1], the arguments made by counsel at the bench trial, and for the reasons set forth below, the Court **GRANTS** Plaintiff's motion for judgment, and **DENIES** Defendant's cross-motion for judgment.

## INTRODUCTION

Section 502(a)(1)(B) of ERISA states that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)B); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 445-46 (2011).

Pursuant to ERISA, a plaintiff is entitled to a bench trial on the administrative record. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc), cert. denied, 528 U.S. 964 (1999). Where the court is "presented with motions for judgment under Federal Rule of Civil Procedure 52, 'the court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true.'" *Arko v. Hartford Life and Accident Ins. Co.*, 2014 WL 5140358, at \*5 (N.D. Cal. 2014) (citing *Kearney*, 175 F.3d at 1094-95). Federal Rule of Civil Procedure 52(a)(1) provides in pertinent part:

> In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

Fed. R. Civ. P. 52(a)(1).

/ / /

/ / /

---

[1] All citations beginning with "AR" reference the administrative record lodged with the Court on December 7, 2016. *See* Doc. No. 22.

Plaintiff began working for the Sycuan Band of The Kumeyaay Nation in 2002 as a "Club Sycuan Representative" in its marketing department. In May 2010, Plaintiff injured her back at work while attempting to lift a heavy box. Plaintiff submitted a claim for long-term disability ("LTD") benefits to Reliance. Reliance approved Plaintiff's claim, and paid benefits at the rate of $1764.90 per month (equal to 60% of Plaintiff's pay as provided for in Reliance's LTD plan). On April 10, 2015, Reliance terminated Plaintiff's disability benefits. Plaintiff appealed the claim decision, but Reliance upheld its decision on August 18, 2015.

**A. Plan Terms**

Reliance's group LTD Plan ("Plan") provides disability benefits to employees at the rate of 60% of their qualified earnings until age 67, as long as the employees are "totally disabled" as defined in the Plan. AR 07-08. The Plan provides the following definitions for total disability:

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness: (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation . . . (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

AR 10.

> The Plan also contains the following limitation for mental or nervous disorders:

> Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a

---

[2] Any conclusion of law which is deemed a finding of fact is incorporated herein by reference.

Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits. . . Mental or Nervous Disorders are defined to include disorders which are diagnosed to include a condition such as: (1) bipolar disorder (manic depressive syndrome); (2) schizophrenia; (3) delusional (paranoid) disorders; (4) psychotic disorders; (5) depressive disorders; (6) anxiety disorders; (7) somatoform disorders (psychosomatic illness); (8) eating disorders; or (9) mental illness.

AR 23.

## B. Plaintiff's Medical Treatment

On May 16, 2010, Plaintiff injured her back at work while attempting to lift a heavy box. On May 17, 2010, Dr. Arjun Reddy examined Plaintiff and diagnosed her with lumbar radiculopathy. AR 3101. Plaintiff ceased working as a marketing representative for Sycuan that day. AR 60.

On May 24, 2010, Plaintiff returned to Dr. Reddy's office for a follow-up examination. AR 3097. Dr. Reddy found that Plaintiff's condition had only slightly improved, so Dr. Reddy ordered an MRI of Plaintiff's lumbar spine. *Id.* Dr. Reddy also prescribed Norco (opioid pain medication). *Id.* On June 1, 2010, Plaintiff underwent an MRI of her lumbar spine. AR 1538. The MRI revealed a 4.2 millimeter central disc protrusion at L5-S1. *Id.*

On June 10, 2010, Dr. Jean-Jacques Abitbol, M.D. (a spinal surgeon), examined Plaintiff and diagnosed her with lumbar radiculitis. AR 1662. Dr. Abitbol prescribed Medrol Dosepak, a steroid to reduce inflammation, and advised Plaintiff to refrain from any strenuous activity and/or heavy lifting. *Id.* Later that month, Plaintiff began physical therapy. The initial physical therapy evaluation revealed tenderness over the lumbar spine, low back pain, decreased range of motion, decreased strength, tenderness to palpation, decreased function, and a disc protrusion at L5-S1. AR 1558-59. Plaintiff's condition declined after three weeks of physical therapy, so Plaintiff began a course of acupuncture. Plaintiff received a course of twelve acupuncture treatments from July 29, 2010 through September 13, 2010. AR 2287, 2282. Plaintiff returned to physical therapy

15cv2677-MMA (BLM)

in October 2010.

In February 2011, Plaintiff was referred to Dr. William Wilson for a pain management consultation. AR 1620. Dr. Wilson recommended Plaintiff receive steroid injections in connection with her back pain. AR 1618. Plaintiff was scheduled to undergo an injection with Dr. Wilson on February 25, 2011. However, due to Plaintiff's anxiety, Dr. Wilson was unable to proceed with the procedure. AR 1621. Dr. Wilson stated, "[u]nless her anxiety can be treated to a certain extent, she will be a poor candidate for procedures or for surgery (based upon her MRI, I do not believe she is a surgical candidate)." *Id.* Moreover, Dr. Wilson opined that "there is a chance that if her anxiety were reduced, her symptoms would be significantly less severe." *Id.*

On May 10, 2011, County Medical Service ("CMS") authorized Dr. Brenton Wynn to treat Plaintiff. AR 3878. Following Dr. Wynn's examination, he concluded Plaintiff suffered from chronic low back pain, L5-S1 disc herniation, facet arthropathy in the lumbar spine, and bilateral lumbosacral radiculopathy. AR 1337. Dr. Wynn recommended Plaintiff undergo an epidural steroid injection, start Neurontin for her nerve pain, undergo an electrodiagnostic/nerve conduction study, and return to physical therapy. *Id.*

## C. Reliance's Finding of Disability

In March 2011, Plaintiff submitted a claim to Reliance for LTD benefits. AR 60. Plaintiff indicated her injury rendered her unable to walk or stand for long periods. AR 59. Ms. Blanca Navarro completed an Attending Physician Statement ("APS") in support of Plaintiff's claim, identifying Plaintiff's diagnosis as an "L5-S1 protrusion," and noting that Plaintiff was limited in her movements and her ability to perform activities of daily living. AR 63.

Upon receipt of Plaintiff's claim, Reliance obtained medical records from Plaintiff's doctors. On June 20, 2011, Registered Nurse Patricia Toth reviewed Plaintiff's medical information, and opined that restrictions and limitations preventing sedentary-level work were supported from the date Plaintiff stopped working. AR 2739-

40. Following Nurse Toth's review, Reliance approved Plaintiff's claim effective August 15, 2010 (following expiration of the Plan's 90-day elimination period). AR 2922-24. Reliance advised Plaintiff that it would need to obtain updated medical information from her treating physicians to determine if she remained disabled beyond September 1, 2011, and noted that the applicable definition of disability would change after 24 months of disability payments per the terms of the Plan. AR 2923.

**D. Reliance Continues to Administer Plaintiff's Claim**

On April 23, 2012, Reliance informed Plaintiff that the definition of disability effective for the first 24 months would expire on August 15, 2012. AR 2957-58. At that time, Plaintiff would need to be unable to perform the material and necessary duties of "any occupation" in order to be considered totally disabled. AR 2957.

In August 2011, Dr. Wynn completed a supplemental APS diagnosing Plaintiff with chronic low back pain, disc herniation, facet arthropathy, and L/5 radiculopathy. AR 4156. Dr. Wynn indicated that Plaintiff received injections to her lower back in June and August 2011. *Id.*

In May 2012, Plaintiff underwent a second MRI of her lumbar spine in response to her ongoing complaints of chronic low back pain and radiculopathy. AR 4016. The MRI revealed a small left paracentral protrusion at L5-S1, but noted there was no significant central stenosis. *Id.* The results indicated the disc bulge "[m]ay slightly contact the arising left S1 root," but noted that the findings were otherwise "unchanged" from the previous MRI in June 2010. *Id.*

As of May 22, 2012, CMS had not yet approved Plaintiff for physical therapy, and Plaintiff was unable to afford the acupuncture treatments recommended by Dr. Wynn. AR 2073. Without any treatment, Plaintiff's pain increased. In October 2012, Plaintiff was involved in a car accident and sustained injuries to her lower back. AR 1818.

In September 2012, Reliance requested Plaintiff participate in a Functional Capacity Evaluation ("FCE"). AR 3819. Physical therapist L. Michelle Smith, MPT, CEAS, performed the FCE on September 24, 2012 (AR 3821), and the FCE lasted for

three (3) hours (AR 3826). Ms. Smith noted Plaintiff was unable to remain seated for 28 minutes before changing positions due to pain, indicating that she could sit on a frequent basis (34% to 66% of the day), but would need to change positions every 30 minutes. AR 3825. Ms. Smith noted that Plaintiff "was negative for inappropriate pain symptoms and non-organic pain symptomology." *Id.* Ms. Smith opined that Plaintiff may be able to work a 4-hour day/20-hours per week at a sedentary physical demand level. AR 3824.

On October 16, 2012, Vocational Consultant Carol Vroman reviewed Plaintiff's records and completed a Residual Employability Analysis to identify other occupations Plaintiff could perform based on her education, training, and experience. AR 3841-50. Ms. Vroman identified multiple occupations Plaintiff could perform, including two sedentary-level occupations: (1) information clerk; and (2) surveillance-system monitor. AR 3841-43. Ms. Vroman concluded that Plaintiff "*is found to possess PART TIME sedentary restrictions and limitations with occasional reach.*" AR 3841 (emphasis in original).

On December 17, 2012, Reliance advised Plaintiff that based on her medical information, Plaintiff was totally disabled under the terms of the Plan, and that her benefits would continue. AR 2995. Reliance, however, advised Plaintiff that she would still need to periodically certify her disability status, and that Reliance would notify her when it needed additional information. *Id.*

**E. Denial of Disability**

In July 2013, Reliance obtained updated medical records from Plaintiff's participation in Brief Battery for Health Improvement testing. AR 3922-24, 3936-41. The report noted that the test results raised "questions about the accuracy and objectivity of [Plaintiff's] self-reports," and stated that symptom magnification should be considered. AR 3938. Plaintiff was noted to have "some troubling somatic complaints," and a moderately high level of pain complaints that could indicate "pain preoccupation or a somatoform pain disorder." *Id.* In addition, high levels of depression and anxiety were noted that could interfere with Plaintiff's rehabilitation and recovery. *Id.* Additionally,

in January 2014, Plaintiff underwent a CT scan of her head in connection with her complaints of migraine headaches. AR 4099. Plaintiff's CT scan results were normal. *Id.*

In June 2014, Plaintiff completed an Activities of Daily Living ("ADL") Form at Reliance's request. Plaintiff indicated she continued to have low back pain, and had difficulty standing, sitting, and walking for long periods. AR 4465. Plaintiff also claimed she required the use of a cane to walk. AR 4467. However, Plaintiff stated she was able to perform household chores such as laundry, dusting, vacuuming, washing dishes, and taking out the trash with the help of her boyfriend. AR 4468.

On November 13, 2014, Nurse Toth reviewed Plaintiff's updated records and recommended that an independent medical examination ("IME") be scheduled. Reliance utilized an independent third party vendor, Medical Consultants Network, LLC, to schedule the IME. AR 4521-35. Dr. Blake Thompson, a physician board certified in physical medicine and rehabilitation, performed the IME on March 5, 2015. AR 4521. Plaintiff asserts this examination lasted for only ten minutes. AR 4548.

During the examination, Plaintiff described a sharp, throbbing, stabbing pain that radiates into the buttocks, legs, and calves. AR 4522. Plaintiff indicated she has numbness and tingling in the buttocks, and a burning, cramping pain in the legs which worsens at night. *Id.* Dr. Thompson noted that the activities increasing Plaintiff's pain are "prolonged sitting, standing and walking." *Id.* Dr. Thompson diagnosed Plaintiff with: 1) lumbar sprain/strain; 2) lumbar degenerative disc disease with 4.2 mm central disc protrusion at L5-S1 without stenosis and the central canal remains widely capacious; and 3) chronic pain syndrome with amplified pain behavior. AR 4532.

Dr. Thompson noted that the [2010] MRI scan "does not reveal any foraminal stenosis to correlate with any radiculopathy." *Id.* "[T]he only truly objective finding" is the disc herniation at L5-S1 that "would reasonably substantiate a level of low back pain," however, the disc herniation "would not likely be associated with significant radiculopathy." AR 4533. Moreover, while Plaintiff "does have tenderness and

decreased range of motion, these are under an element of subjective cooperation or response by the patient." *Id.* Dr. Thompson opined that based on Plaintiff's objective findings of lumbar disc herniation, "it would be reasonable that she have restrictions for the lumbar spine. With regard to her subjective complaints, it is my opinion that these are amplified and very subjective." AR 4534-35. Plaintiff's subjective complaints "would not be taken into consideration on a [sic] absolute basis therefore but can be considered in their entirety." AR 4535.

Further, Dr. Thompson opined,

> [I]t is my opinion that [Plaintiff] ***would be able to perform full duty at a light work level including the ability to exert up to 20 pounds of force occasionally and 10 pounds of force constantly such as 2/3 or more of the time to move objects*** and the physical demand and requirements are in excess of those of sedentary work even though the weight lifting may only be a negligible amount. She also would be able to perform walking or standing when required and can perform sitting most of the time but would be able to take a break from sitting as she would be able to push or pull arm or leg controls.

*Id.* (emphasis added).

On March 5, 2015, Reliance obtained surveillance of Plaintiff. AR 4540-45. The surveillance shows Plaintiff walking to her vehicle and driving to her appointment with Dr. Thompson. AR 4543. The report noted that Plaintiff "show[ed] no visible signs of injury, limitation or discomfort." *Id.* Following the appointment, however, Plaintiff "walk[ed] with a noticeable limp" as she entered her vehicle. AR 4544. Next, Plaintiff drove to the Fashion Valley Mall in San Diego, California, where she remained for approximately 2.5 hours. AR 4545. Plaintiff was not observed to be using a cane, as she previously claimed on her ADL form. AR 4467.

On April 10, 2015, Reliance notified Plaintiff that her claim was closed effective that day due in large part to Dr. Thompson's report. AR 3055-59. Reliance did not mention the video surveillance conducted in March 2015. Reliance advised Plaintiff that because she had already received more than 24 months of benefits, she was only entitled

1  to ongoing benefits if she was unable to perform any occupation that her education,

2  training, and experience would reasonably allow.  AR 3055.  Reliance also advised

3  Plaintiff that the Plan limited benefit payments to 24 months for disabilities caused or

4  contributed to by mental or nervous disorders.  AR 3056.  Moreover, Reliance informed

5  Plaintiff of her right to request a review of the claim decision within 180 days of her

6  receipt of the letter.  AR 3058.

7  **F. Plaintiff's Appeal**

8  Plaintiff appealed the claim decision in May 2015.  AR 4548-49.  Plaintiff sought a

9  second opinion from Dr. Wynn following the IME with Dr. Thompson.  AR 4549.

10  Plaintiff provided a report from Dr. Wynn to Reliance, claiming that it was much more

11  thorough than Dr. Thompson's report.

12  Based on Dr. Wynn's treatment of Plaintiff spanning several years, Dr. Wynn

13  indicated:

14  > The patient does have a disc herniation at L5/S1.  She also has on physical

15  > exam a lumbar scoliosis with a functional leg length discrepancy correlating
   > with a Quadratus lumborum muscle spasm.  She has shortened hip flexors

16  > consistent with bilateral iliopsoas spasms and palpable lumbar paraspinal
   > muscle spasms in addition to limited range of motion and focal L5 and L4

17  > spinous process tenderness.  While the limitation in range of motion and the

18  > tenderness to palpation may fall under the element of subjective cooperation
   > the above findings do substantiate the presence of complaints.

19

20  AR 4552.

21  Dr. Wynn concluded that Plaintiff is currently "***unable to perform even a partial***

22  ***work day at a sedentary capacity***.  While she can exert up to 10lbs of force occasionally

23  and sit up to one hour with frequent repositioning, she would be unable to maintain this

24  for several consecutive hours, and she would be unable to tolerate repeating this each day

25  during a work week."  AR 4554 (emphasis added).  Moreover, without a comprehensive

26  management treatment, Plaintiff "will not be able to tolerate the duties required of even a

27  partial day of sedentary capacity."  *Id.*

28  / / /

## G. Reliance Upholds Claim Decision

In response to Plaintiff's appeal, Reliance obtained a second IME through a different independent third party vendor, MLS National Medical Evaluation Services. AR 4576, 4581-4604. Dr. Marcia Elfenbaum, a board certified physical medicine and rehabilitation physician, performed the second IME on July 24, 2015, and the examination lasted for 1.5 hours. AR 4581-4604.

Dr. Elfenbaum diagnosed Plaintiff with: 1) chronic pain syndrome; 2) lumbar degenerative disc disease, L5-S1 without foraminal stenosis; 3) depression; 4) anxiety; and 5) lumbar sprain/strain injury from 2010. AR 4599. Dr. Elfenbaum concluded that Plaintiff's MRI study "does not reveal any significant foraminal stenosis or correlate with lumbar radiculopathy." AR 4600. Dr. Elfenbaum indicated "[t]he MRI findings of a central disc herniation, without foraminal stenosis, may cause low back pain, but is not typically associated with lower extremity radicular complaints. Psychological factors contributing to her chronic pain would correlate with her diagnosis of chronic pain syndrome." AR 4601. Dr. Elfenbaum recommended an additional MRI study, "since it has been over five years since [Plaintiff's] previous lumbar radiologic imaging." AR 4602. Moreover, "[w]hen considering the claimant's overall diagnoses and condition, should her medical treatment be successful in addressing her chronic pain syndrome, *from a physical standpoint she should be able to perform some sedentary work*." *Id.* (emphasis added). Plaintiff "should be considered capable of frequent sitting, standing and walking as well as using foot controls. She should be considered capable of occasionally driving, bending, squatting, and ascending and descending stairs." *Id.* However, Plaintiff "should avoid any activities that would exacerbate low back pain." *Id.*

On August 18, 2015, Reliance notified Plaintiff that it was upholding the claim decision and that Plaintiff had exhausted her administrative remedies. AR 3066-75. Reliance summarized the results of the surveillance taken on March 5, 2015, and Dr. Elfenbaum's IME findings. AR 3067-73. Because Plaintiff was capable of performing at least the sedentary-level occupations previously identified absent her psychological

issues giving rise to chronic pain syndrome, and because benefits had already been paid for more than the 24 months permitted under the Plan's limitation for disabilities caused or contributed to by a mental or nervous disorder, Reliance concluded Plaintiff was not entitled to additional benefits. AR 3073.

Plaintiff attempted to submit a second appeal challenging Reliance's findings. AR 3078. On November 4, 2015, Reliance advised Plaintiff that the 2015 claim decision was final because Plaintiff is only entitled to one appeal, which she exhausted. *Id.*

## CONCLUSIONS OF LAW[3]

Reliance argues Plaintiff is not entitled to LTD benefits for two reasons: 1) Plaintiff cannot meet her burden of demonstrating that she is "totally disabled" under the terms of the Plan; and 2) the Plan's mental disorder limitation applies to Plaintiff's claim. *See* Doc. No. 27 at 15, 17.

### A. Standard of Review

A claim of denial of benefits in an ERISA action "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). A district court is generally limited to reviewing the evidence contained in the administrative record. *See Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007). "[T]he district court should exercise its discretion to consider evidence outside of the administrative record only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Id.* (internal quotations omitted).

Here, although the Plan grants Reliance discretionary authority to determine eligibility and construe the terms of the Plan, the parties have stipulated to a de novo

---

[3] Any finding of fact which is deemed a conclusion of law is incorporated herein by reference.

standard of review. *See* Doc. Nos. 26 at 20; 27 at 13. Under a de novo standard, the court "does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010).

**B. Plaintiff's Disability**

As an initial matter, the parties agree that Plaintiff bears the burden of proving by a preponderance of the evidence that she is totally disabled, and thus entitled to LTD benefits under the terms of the Plan. *See Muniz*, 623 F.3d at 1295-96. Plaintiff argues she has met her burden of proving she is totally disabled (Doc. No. 26 at 21), while Reliance contends Plaintiff has failed to demonstrate she is incapable of performing alternative sedentary occupations (Doc. No. 27 at 15).

Pursuant to the terms of the Plan, a person is "totally disabled" if, as a result of an injury or sickness, and "after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of *any* occupation." AR 10 (emphasis added). Any occupation is defined as "one that the Insured's education, training or experience will reasonably allow." *Id.* Reliance "consider[s] the Insured Totally Disabled if due to an Injury Or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a full-time basis." *Id.* Thus, Plaintiff must demonstrate by a preponderance of the evidence that she is unable to perform the material and substantial duties of any occupation that her education, training, and experience will reasonably allow.

Here, Plaintiff has met her burden of demonstrating that she is "totally disabled" under the terms of the Plan. Dr. Wynn's attending physician reports certifying Plaintiff's disability corroborate Plaintiff's pain complaints. Dr. Wynn, who first examined Plaintiff in May 2011, concluded as recently as May 2015 that Plaintiff is currently unable to "perform even a partial work day at a sedentary capacity." AR 4554. Dr. Wynn observed that Plaintiff has "a disc herniation at L5/S1." AR 4552. Dr. Wynn noted that

despite the fact that the Plaintiff's 2012 MRI does not reveal any foraminal stenosis to correlate with a radiculopathy, "it is quite possible for the patient to experience a chemical radiculitis form [sic] the disc herniation leading to chronic nerve root irritation, which strongly correlates with her symptoms, history and examination." *Id.* Dr. Wynn opined that while Plaintiff "can exert up to 10 lbs of force occasionally and sit up to one hour with frequent repositioning, she would be unable to maintain this for several consecutive hours, and she would be unable to tolerate repeating this each day during a work week." AR 4554. Additionally, the Residual Employment Analysis testing Reliance requested concluded Plaintiff is "*found to possess PART TIME sedentary restrictions and limitations with occasional reach*." AR 3841 (emphasis in original).

The Functional Capacity Evaluation ("FCE") results further support a finding of disability in this case. Plaintiff underwent three (3) hours of functional capacity testing on September 24, 2012, and the results indicate Plaintiff is unable to perform full-time employment at any level. AR 3824. Specifically, the testing revealed "the client may be able to work a 4 hour day within the parameters recommended below with proper positioning and job switching to avoid sustained painful positioning." *Id.* Notably, Plaintiff tested "negative overall for Waddell Signs." AR 3830. The FCE revealed "[t]he client's physical behaviors correlated with her subjective complaints of paint." AR 3824.

The IMEs similarly support a finding that Plaintiff is totally disabled under the Plan. Dr. Elfenbaum concedes that Plaintiff is not capable of performing the material duties of any occupation noting, "should [Plaintiff's] medical treatment be successful in addressing her chronic pain syndrome, from a physical standpoint she should be able to perform some sedentary work." AR 4603. The only physician who claimed Plaintiff was capable of performing the material duties of any occupation is Dr. Thompson. In his report, Dr. Thompson enumerated all of Plaintiff's medical records that he reviewed for purposes of his examination. AR 4524-30. Each entry is detailed and describes the date of any given examination, which doctor examined Plaintiff, and notes any diagnoses and treatment options. *See id.* However, as Plaintiff notes, Dr. Thompson does not include in

Plaintiff's medical history an additional thirty-two (32) medical visits, seven (7) epidural injections, two (2) facet joint injections, or the 2012 MRI suggesting impingement of the sciatic nerve. AR 4524-30. While Dr. Thompson's report indicates that he reviewed "additional medical records" beyond the sixty (60) reports he specifically lists, Dr. Thompson does not identify those reports. AR 4530. The most recent medical report listed is dated November 17, 2012—more than two and one-half years prior to Dr. Thompson's examination. *Id.* Accordingly, the Court finds Dr. Thompson reviewed and relied upon an incomplete medical file with regards to Plaintiff's examination.

Moreover, Plaintiff claims Dr. Thompson's examination lasted for only ten (10) minutes. AR 4548. During this examination, Dr. Thompson only asked Plaintiff to "walk, tip toe, and pick up [her] leg," despite the fact that Dr. Thompson's report indicated Plaintiff could sit, stand, squat, climb stairs, climb ladders, kneel, crawl, use foot controls, and drive on a frequent basis. AR 4536. Dr. Thompson believed that Plaintiff's disc herniation would "cause low back pain," and that Plaintiff "does have impairment with regard to activities that would stress the lumbar spine." AR 4533, 4534. Further, the first page of Dr. Thompson's report states, "[t]he examinee was informed at the time of the examination not to engage in any physical maneuvers beyond what *he* could tolerate, or which *he* felt were beyond *his* limits, or could cause physical harm or injury." AR 4521 (emphasis added). In Plaintiff's letter appealing Reliance's decision to terminate disability payments, Plaintiff asserts that Dr. Thompson's use of masculine pronouns indicates that this report could possibly reference "another [male] patient." AR 4549. As such, these issues raise questions as to the reliability of Dr. Thompson's report and findings.

Reliance emphasizes the findings of Drs. Thompson and Dr. Elfenbaum, who both opined that Plaintiff demonstrated increased pain behavior during the examinations, and noted positive Waddell's signs of 4/5 and 5/5, respectively. AR 4531, 4599. "Waddell's signs are a group of physical signs that may indicate a non-organic or psychological component to lower back pain. Waddell's signs are used to detect malingering or

exaggeration in patients complaining of lower back pain." *Quesada v. Astrue*, 2011 WL 4499006, at *5 n.4 (S.D. Cal. 2011); s*ee also Diaz v. Colvin*, 2016 WL 7180308, at *6 n.2 (W.D. Wash. 2016) ("Physicians used Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain."). However, Drs. Thompson and Elfenbaum did not review Plaintiff's entire medical file, including the 2012 MRI suggesting impingement of the sciatic nerve (AR 2145). Moreover, Dr. Wynn stated that Plaintiff's "various muscle spasms and biomechanical factors" correlate with Plaintiff's "pain complaints and functional limitations." AR 4553. Finally, the FCE test results indicated that "[o]verall [Plaintiff] was negative for inappropriate pain symptoms and non-organic pain symptomology." AR 3825.

Reliance claims the video surveillance conducted on March 5, 2015 raises "concerns regarding Plaintiff's credibility and the severity of her reported symptoms." Doc. No. 27 at 10. The surveillance shows Plaintiff walking to her vehicle and driving to her appointment with Dr. Thompson. AR 4543. Reliance emphasizes that Plaintiff did not need to use a cane, as previously claimed on her ADL form, yet the surveillance shows Plaintiff walking with a limp after her appointment. Moreover, following Plaintiff's appointment with Dr. Thompson, Plaintiff drove to the Fashion Valley mall in San Diego, California, where she remained for "approximately 2.5 hours." *Id.* However, Marshall Investigative Group, the company conducting surveillance Plaintiff, observed Plaintiff for three days (March 4-6, 2015). AR 4540. Plaintiff did not leave her home on either March 4th or March 6th, corroborating Plaintiff's pain complaints. AR 4541. Further, the video reveals that on March 5, 2015, Plaintiff walked with a noticeable limp after her appointment with Dr. Thompson, supporting Plaintiff's contention that after sitting and waiting for two hours to be seen by Dr. Thompson, she was "in excruciating pain and could barely walk" when the nurse called her name. AR 4548. The surveillance report indicates that the surveillance company "lost visual sight of [Plaintiff]" upon entering the mall, but observed Plaintiff returning to her vehicle 2.5 hours later. AR 4541. Thus, the administrative record is silent as to Plaintiff's activities, or lack thereof,

during her time at Fashion Valley. Accordingly, the surveillance footage is insufficient to overcome Plaintiff's showing by a preponderance of the evidence that she is disabled.

Finally, the Court takes into consideration the fact that Reliance paid disability benefits to Plaintiff for nearly five years. *See Muniz,* 623 F.3d at 1296 ("That benefits had previously been awarded and paid may be evidence relevant to the issue of whether the claimant was disabled and entitled to benefits at a later date. . ."). Reliance paid monthly LTD benefits well beyond the twenty-four (24) period in which the definition of being "totally disabled" meant Plaintiff was not capable of performing the material duties of any occupation on a full-time basis.

In sum, based upon the evidence contained in the administrative record, the Court finds Plaintiff has met her burden of proving by a preponderance of the evidence that she is unable to perform the material duties of any occupation on a full-time basis. Accordingly, the Court finds Plaintiff is "totally disabled" under the Plan.

### C. Mental Disorder Limitation

Because Plaintiff has satisfied her burden of demonstrating that she is totally disabled under the Plan, the Court must next address whether Plaintiff's disability benefits are subject to the Plan's 24-month mental health limitation, which limits LTD benefits for a disability "caused by or contributed to by" a mental or nervous disorder. AR 23. Reliance asserts that the mental disorder limitation applies in this case and that to the extent Plaintiff is unable to work, her disability is "caused or contributed to by" her psychological issues. Doc. No. 27 at 17.

The Court takes into consideration the shifting rationale asserted by Reliance over the course of the administrative review process. *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 659 (6th Cir. 2013) (finding the administrator's review of the claimant's disability claim was reasonable under an abuse of discretion standard of review, in part, because the basis underlying the denial "was consistent throughout the administrative-review process"). In 2011, Reliance granted Plaintiff disability benefits based on a finding of a physical disability, and Reliance continued to affirm Plaintiff's disability for

nearly five years. AR 2922-24, 2995. In April 2015, Reliance notified Plaintiff that she was no longer considered totally disabled under the terms of the Plan. AR 3057. Reliance did not rely upon the mental disorder limitation until the final denial of benefits in August 2015. AR 3068, 3072.

The Plan's mental disorder provision provides that "[m]onthly benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period." AR 23. Mental or nervous disorders "include disorders which are diagnosed to include a condition such as: (1) bipolar disorder (manic depressive syndrome); (2) schizophrenia; (3) delusional (paranoid) disorders; (4) psychotic disorders; (5) depressive disorders; (6) anxiety disorders; (7) somatoform disorders (psychosomatic illness); (8) eating disorders; or (9) mental illness." *Id.*

### 1. Burden of Proof

The parties disagree as to which party bears the burden of proving the applicability of the mental disorder limitation set forth in the Plan. Plaintiff argues that the Plan's mental disorder limitation provision operates as a coverage exclusion; thus, Reliance bears the burden of proving the provision applies to her claim. *See* Doc. No. 26 at 24. Reliance, however, asserts the mental disorder provisions is a limitation; thus, Plaintiff bears the burden of proving that her disability was not caused by or contributed to by a mental or nervous disorder. *See* Doc. No. 30 at 5.

"[T]he issue of whether it is the insured or the insurer who bears the burden of proving that a limitation does or does not apply remains unsettled." *Seaman v. Mem'l Sloan Kettering Cancer Ctr.*, 2010 WL 785298, at *10 (S.D.N.Y. 2010). Reliance relies on *Hoffmann v. Life Insurance Company of North America*, where the court held that a provision limiting the payment of benefits to two years for disabilities based upon a mental disorder was not an exclusion under the policy, and therefore, the plaintiff bore the burden of proving the limitation did not apply. 2014 WL 7525482, at *5-6 (C.D. Cal.

2014); *see also Doe v. Prudential Ins. Co. of Am.*, 2016 WL 8609983, at *5 (C.D. Cal. 2016) (relying on *Hoffmann* in concluding that the mental disorder provision is a limitation, not an exclusion, and that the plaintiff has the burden of proof as to the application of the limitation); *Ringwald v. Prudential Ins. Co. of Am.*, 754 F. Supp. 2d 1047, 1056-57 (E.D. Mo. 2010) (same). On the other hand, Plaintiff relies on *Okuno v. Reliance Standard Life Insurance Company*, where the Sixth Circuit held that the defendant "bears the burden to show that the exclusion on which it based denial of benefits, the Mental and Nervous Disorder Limitation, applies in this case." 836 F.3d 600, 609 (6th Cir. 2016); *see also Owens v. Rollins, Inc.*, 2010 WL 3843765 (E.D. Tenn. 2010) (placing burden on insurer to prove mental illness limitation does not apply); *Deal v. Prudential Ins. Co.*, 263 F. Supp. 2d 1138, 1143 (N.D. Ill. 2003) (same).

Here, the Court concludes that it need not determine whether Plaintiff or Reliance bears the burden of proving whether Plaintiff's disability was subject to the mental disorder provision because, for the reasons set forth below, Plaintiff prevails regardless of which party bears the burden. *See Gent v. CUNA Mut. Ins. Soc'y,* 611 F.3d 79, 83 (1st Cir.2010) (declining to determine which party bore the burden of proof as to the applicability of a mental illness limitation provision because where "the burden of proof is the preponderance of the evidence standard, how the burden is allocated does not much matter unless one or both parties fail to produce evidence, or the evidence presented by the two sides is in perfect equipoise.") (internal quotations omitted); *Dutkewych v. Standard Ins. Co.*, 781 F.3d 623, 634 n.7 (1st Cir. 2015) ("Here, as in *Gent*, we need not decide how to allocate the burden of proof [as to the mental disorder limitation] since [the defendant] would prevail regardless.").

### 2. *No Formal Diagnosis*

Pursuant to the terms of the Plan, mental or nervous disorders "include disorders which are *diagnosed* to include" conditions such as bipolar disorder, depressive disorders, and anxiety disorders. AR 23 (emphasis added). Thus, under the Plan, a diagnosis is a prerequisite to the application of the mental disorder provision. At the

bench trial, Plaintiff's counsel argued that no psychiatrist diagnosed Plaintiff with clinical depression or some sort of anxiety disorder. *Transcript* at 44:11-15. Reliance concedes that there is no formal diagnosis of a mental disorder in this case. Specifically, Reliance's counsel indicated "well, we don't have a diagnosis from a doctor." *Transcript* at 53:23-24. Instead, Reliance points to various references to anxiety and depression in the administrative record. While Drs. Thompson and Elfenbaum diagnosed Plaintiff with Chronic Pain Syndrome (AR 4532, 4599), and Dr. Elfenbaum diagnosed Plaintiff with depression and anxiety (AR 4599), neither doctor is a psychiatrist. In fact, there is no evidence in the administrative record that Reliance requested a psychiatrist examine Plaintiff.[4] Plaintiff's counsel argued that "[t]he fact is[,] nobody felt [Plaintiff] needed a psychiatrist." *Transcript* at 60:19-20.

The Court finds it troubling that Reliance based its final denial of Plaintiff's LTD benefits on the mental disorder limitation in the absence of a formal psychological diagnosis. *See Okuno*, 836 F.3d at 611 (noting that under an abuse of discretion standard of review, the administrator's "failure to consult with a mental health expert— particularly when it denied [the plaintiff] benefits on the basis that her disability included a psychiatric component—indicates a lack of deliberate and reasoned decision-making.").

### 3. *Mental Disorder Limitation Does Not Apply To Mental Impairments Resulting From Physical Disorders*

Even if there were a psychiatric diagnosis in this case, the mental disorder limitation does not apply. The meaning of the phrase "mental or nervous disorders" is not self-evident. While Reliance defines the phrase to include nine mental or nervous disorders, the Plan is ambiguous as to how the limitation applies when both a physical

---

[4] For purposes of the Social Security Administration decision, two psychiatrists did review Plaintiff's medical records and found that Plaintiff's "mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." AR 1462; *see also Transcript* at 62:12-25. The Administrative Law Judge, however, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. AR 1467.

and mental condition contribute to a disability.  Plaintiff asserts that the mental disorder limitation does not apply to mental or nervous disorders which arise from a physical disorder (Doc. No. 26 at 29-31), while Reliance contends Plaintiff's psychological impairments are separate diagnoses from her physical injury (Doc. No. 30 at 11).

In *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Technology, Inc.*, the Ninth Circuit, in reviewing the plaintiff's claim under a de novo standard of review, analyzed a two-year mental disorder limitation nearly identical to the one in this case.  125 F.3d 794, 799 (9th Cir. 1997).  The court noted that the plan "was silent as to whether the administrator should look to causes or symptoms when determining whether the claimant has a 'mental disorder' for purposes of applying the limitation." *Id.* at 796.  The plaintiff claimed her depression was a symptom of her fibromyalgia, while the administrator terminated the plaintiff's claim on the ground that she had failed to establish that her fibromyalgia, separate from psychological factors, was disabling in and of itself.  *Id.* at 796-97.  When a de novo review standard applies, the court "construe[s] the Plan in accordance with the rules normally applied to insurance policies." *Id.* "Ambiguities in ordinary insurance contracts are construed against the insurance company." *Id.*  The court noted that "the rule, known as the doctrine of *contra proferentem*, requires us to adopt the reasonable interpretation advanced by [the plaintiff], i.e., that the phrase 'mental disorder' does not include 'mental' conditions resulting from 'physical' disorders." *Id.*

Reliance claims *Maurer v. Reliance Standard Life Insurance Co.* is instructive; however, such reliance is misplaced.  2011 WL 1225702 (N.D. Cal. 2011).  There, the plaintiff filed for disability benefits on account of her chronic neck and back pain, and the claim administrator approved the plaintiff's claim and began paying her disability benefits.  *Id.* at *2.  The following year, the plaintiff was diagnosed with "bipolar diathesis," "Mood Disorder with Generalized Medical Condition," "Generalized Anxiety Disorder," and "Pain Disorder with Mixed Physical and Psychological features." *Id.* Thereafter, the claim administrator terminated the plaintiff's disability benefits. *Id.* at *3.

The court indicated that "[a]s long as a mental disorder is a component of a claimant's overall disability, and a claimant would not be disabled but for the contribution of such mental disorder, the Limitation is applicable."[5]  *Id.* at *7.

The district court in *Maurer* distinguished *Lang* because the district court in *Maurer* applied an abuse of discretion standard, unlike the de novo standard utilized in *Lang*.  *Id.*  The Ninth Circuit in *Lang* expressly stated, "[i]f we were according [the administrator's] interpretation the deference ordinarily due an administrator vested with discretion to interpret the plan, we would have to uphold [the administrator's] interpretation as reasonable."  *Lang*, 125 F.3d at 799.  The Court is mindful that the Plan in this case provides Reliance with "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits."  AR 15.  However, the parties stipulated to a de novo standard of review.  *See* Doc. Nos. 26 at 20; 27 at 13.  As mentioned above, under a de novo standard, the court "does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan."  *Muniz*, 623 F.3d at 1295-96.  Thus, *Lang*—not *Maurer*—guides the Court's analysis in determining whether the mental disorder limitation applies in this case.  Under a de novo standard of review, the Court finds that the mental disorder limitation does not apply.

Here, similar to *Lang*, the Plan is silent as to how to apply the mental disorder limitation when intertwined with a physical disorder.  On the one hand, the Plan could be interpreted to mean that even if a mental disorder is caused by a physical injury, that mental disorder does not affect the applicability of the Plan's limitation on benefits.  On the other hand, however, the Plan could be interpreted to mean that mental disorders

---

[5]  On appeal, the Ninth Circuit affirmed the district court's ruling, noting that the doctrine of *contra proferentem* does not apply under an abuse of discretion standard of review.  *Maurer*, 500 F. App'x 626, 628 (9th Cir. 2012).  Moreover, the administrator "permissibly applied" the plan's mental illness limitation even when the plaintiff's mental disorder was not the sole cause of the plaintiff's disability, but merely "contributed to" her disability.  *Id.*

which result from a physical injury are not subject to the Plan's mental disorder limitation, as Plaintiff advocates. The Court finds the Plan language to be ambiguous in that the Plan could reasonably refer either to illnesses with non-physical causes, or to illnesses with physical causes. *See Lang*, 125 F.3d at 799 (noting that plan language similar to that in this case "presents an almost classic ambiguity."). Thus, pursuant to the doctrine of *contra proferentem*, the Court is required to adopt the reasonable interpretation Plaintiff advances—that the phrase mental or nervous disorders does not include mental conditions arising from physical impairments. *See Kitterman v. Standard Ins. Co.*, 2011 WL 1541310 (D. Or. 2011) (stating "if plaintiff's migraines are a cause of his depression, the [mental disorder] limitation does not apply and plaintiff is entitled to additional benefits."); *Perryman v. Provident Life & Accident Ins. Co.*, 690 F. Supp. 2d 917, 951 (D. Ariz. 2010) ("The Court interprets the [mental/nervous disorder] provision as not being applicable to mental/nervous impairments that are secondary to a physical impairment."); *Lamarco v. CIGNA Corp.*, 2000 WL 1456949, at *7 (N.D. Cal. 2000) (concluding that disability benefits were improperly terminated after two years based on a mental disorder limitation because the record established that the plaintiff's mental impairments were a result of her physical disorders, which included fibromyalgia).

The administrative record supports a finding that Plaintiff's psychological issues arise from her back injury. Plaintiff's counsel argued at the bench trial that Plaintiff's depression and anxiety are symptoms of her chronic pain. *See Transcript* at 40:7-13. Prior to Plaintiff's injury in 2010, Plaintiff had no history of depression or anxiety. In fact, there are only four references to Plaintiff's anxiety and depression in the administrative record, all of which occurred long after Plaintiff's injury.

The first reference to Plaintiff's anxiety is by Dr. Wilson in his February 2011 report—nearly one year after Plaintiff's injury. Dr. Wilson indicated that due to Plaintiff's anxiety, she was unable to undergo a lumbar epidural steroid injection. AR 1621. Defense counsel argued that Plaintiff's "anxiety was not arising from the thought of a procedure" (*Transcript* at 52:18-24) because Dr. Wilson also noted that if Plaintiff's

"anxiety were reduced, her pain symptoms would be significantly less severe" (AR 1621). However, Plaintiff later received numerous back injections all without mention of her anxiety. AR 2031, 2038, 2051, 1777, 1786, 1705, 1316. Moreover, Dr. Wynn indicated in his 2015 report that Plaintiff's "constant low back pain, radicular symptoms in her bilateral lower extremities, . . . deconditioning and impaired sleep are *progressive developments in her chronic pain syndrome derived from her original injury* on May 16, 2010." AR 4552-53 (emphasis added).

The second reference to Plaintiff's depression and anxiety occurred in July 2013—three years after Plaintiff's injury, when Plaintiff participated in Brief Battery for Health Improvement testing. AR 3936-41. The test results indicated that Plaintiff has a "high level of depressive thoughts and feelings" and a "high level of anxious thoughts and feelings." AR 3938. However, the testing also revealed that "[i]f there is an objective basis for this patient's reports of localized severe pain and perceived disability, her reported depression and anxiety may be a reaction to her condition." *Id.* The 2012 MRI suggesting impingement on the sciatic nerve provides an objective basis for Plaintiff's reports of localized severe pain and perceived disability. Thus, the logical conclusion is Plaintiff's depression and anxiety are a reaction to her physical injury.

The third reference to Plaintiff's anxiety and depression is by Dr. Thompson in March 2015, who opined that Plaintiff's mental conditions, including her depression and anxiety, were "contributing significantly to [Plaintiff's] ongoing pain complaints." AR 4532. However, as noted above, Dr. Thompson did not review dozens of Plaintiff's medical records that corroborated Plaintiff's pain complaints, including Plaintiff's 2012 MRI. As such, the Court gives little weight to Dr. Thompson's findings.

The final reference to Plaintiff's anxiety and depression is by Dr. Elfenbaum, who opined that "[s]ince chronic pain syndrome is a combination of both psychiatric and physical factors, both will need to be addressed appropriately in order to improve her success and ability to function in the workplace." AR 4604. Thus, Dr. Elfenbaum concedes that Plaintiff's diagnosis of chronic pain syndrome includes both physical and

psychiatric factors and implies that that Plaintiff's psychiatric factors are related to her physical disability. Accordingly, the administrative record reveals that Plaintiff became anxious and depressed as a result of her frustration with her recovery progress.

In sum, the Court finds that the mental disorder limitation does not apply because Plaintiff did not receive a formal diagnosis of a mental disorder. Even if Plaintiff had been diagnosed with a mental disorder, the Court must adopt the reasonable interpretation Plaintiff advances—that the phrase "mental or nervous disorders" does not include mental conditions arising from physical impairments. Because the Court finds that the administrative record reveals Plaintiff's psychological impairments arise from her physical disorder, the mental disorder limitation does not apply.

<u>CONCLUSION</u>

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion for judgment, and **DENIES** Defendant's cross-motion for judgment. Reliance must reinstate Plaintiff's monthly disability benefits retroactive to its denial of benefits, along with prejudgment interest. Plaintiff may also be entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). Plaintiff must file her motion for attorneys' fees and costs within fourteen (14) days of this Order.[6] The Clerk of Court is instructed to enter judgment accordingly.


**IT IS SO ORDERED.**


Dated: April 19, 2017

HON. MICHAEL M. ANELLO
United States District Judge

---

[6] If Plaintiff seeks to obtain a prejudgment interest rate that deviates from the rate set forth in 28 U.S.C. § 1961, Plaintiff must also address this issue in her motion for attorneys' fees and costs.